E-FILED
Thursday, 30 March, 2023  02:38:29 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MAURICE COLLINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-02339-SLD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court are Petitioner Maurice Collins's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255 Motion"), ECF No. 1, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No. 6, and counseled motion for a status conference, ECF No. 11.  For the reasons that follow, the Pro Se 2255 Motion and motion for a status conference are MOOT, and the Counseled 2255 Motion is DENIED IN PART.

## BACKGROUND[1]

### A. District Court

In May 2014, a criminal complaint was filed alleging that Collins violated 21 U.S.C. § 841(a)(1) by distributing a controlled substance.  *See* Compl. 1, Cr. ECF No. 1.  Assistant Federal Public Defender Elisabeth Pollock was appointed to represent him.  *See* Cr. May 14, 2014 Min. Entry.  An indictment charging Collins with three counts of distributing a mixture and substance containing cocaine in violation of 21 U.S.C. § 841(b)(1)(C) and one count of distributing at least 28 grams of a mixture and substance containing crack cocaine in violation of

---

[1] References to Collins's underlying criminal case, *United States v. Collins*, 2:14-cr-20032-SLD, take the form: Cr.__.

§ 841(b)(1)(B) followed.  Indictment 1–3, Cr. ECF No. 8.  On November 10, 2014, the Government filed a notice pursuant to 21 U.S.C. § 851 that it would seek to rely on Collins's prior felony conviction for manufacture/delivery of a controlled substance to enhance his sentence.  *See* Not. Prior Conviction, Cr. ECF No. 18.  On November 19, 2014, Collins pleaded guilty to all four counts of the indictment without a written plea agreement.  Cr. Nov. 19, 2014 Min. Entry.

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing.  PSR, Cr. ECF No. 27.  USPO assigned Collins a base offense level of 24, *id.* ¶ 47, a two-level increase for being an organizer, leader, manager, or supervisor in the distribution of cocaine and crack cocaine, *id.* ¶ 50, and a two-level increase for obstructing justice based on Collins removing and destroying a GPS device that had been placed in his vehicle by law enforcement pursuant to a search warrant, *id.* ¶ 51.  It also opined that Collins was not eligible for an acceptance of responsibility adjustment.  *See id.* ¶ 54.  Accordingly, USPO listed his total offense level as 28.  *Id.* ¶ 55.  With a criminal history category of I, *id.* ¶ 70, and an offense level of 28, the Sentencing Guidelines range for imprisonment normally would be 78 to 97 months, *id.* ¶ 135.  However, because Collins was subject to a 120-month mandatory minimum due to his prior felony drug conviction, *see* 21 U.S.C. § 841(b)(1)(B) (effective Aug. 3, 2010 to Dec. 20, 2018), his Guidelines range became 120 months, PSR ¶ 135.  He was subject to a six-year term of supervised release on counts one through three and an eight-year-term of supervised release on count four.  *See id.* ¶ 137; 21 U.S.C. § 841(b)(1) (effective Aug. 3, 2010 to Dec. 20, 2018).

Collins made, among other objections, five objections to the facts set forth in the PSR.  PSR 29–33.  He also objected to the failure to give him a reduction for acceptance of

responsibility, *id.* at 33–34, the leadership enhancement, *id.* at 34–35, and the failure to find him

eligible for relief under 18 U.S.C. § 3553(f) (also known as the safety valve provision), *id.* at 36.

The sentencing hearing was held on May 4, 2015.  *See* Cr. May 4, 2015 Min. Entry.

United States District Judge Colin Bruce, who was then presiding over the case, found that there

was sufficient evidence to find that Collins was a manager or supervisor.  Sentencing Hr'g Tr.

23:24–26:5, Cr. ECF No. 39.  In so finding, he overruled some of Collins's factual objections.

*See, e.g.*, *id.* at 27:25–28:2, 28:10–11; *see also* PSR 29, 31.  Because being a manager or

supervisor meant Collins was not eligible for safety-valve relief from the mandatory minimum,

most of Collins's other objections did not affect his Guidelines range.  *See, e.g.*, Sentencing Hr'g

Tr. 28:19–29:7, 31:14–32:3.  Judge Bruce accordingly did not address some of the objections but

did note that he "would likely find that . . . Collins did not obstruct justice . . . and would

probably find that he was entitled to acceptance of responsibility."  *Id.* at 26:10–16.  Judge Bruce

sentenced Collins to 120 months of imprisonment.  *See id.* at 41:15–16, 44:22–45:1.  He noted

that if he would have found Collins eligible for safety-valve relief, he would have imposed a

lesser sentence.  *Id.* at 41:17–18.  He sentenced Collins to six years of supervised release on

counts one, two, and three, and eight years of supervised release on count four, to be served

concurrently.  *Id.* at 45:10–15.

**B.  First Appeal**

Collins appealed.  Not. Appeal, Cr. ECF No. 35.  The Seventh Circuit held that Judge

Bruce erred in finding Collins a supervisor or manager, so it vacated Collins's sentence and

remanded for resentencing.  *United States v. Collins*, 877 F.3d 362, 364 (7th Cir. 2017).

### C. Resentencing

Collins's resentencing began on May 7, 2018 and concluded on May 21, 2018  *See* Cr.
May 7, 2018 Min. Entry; Cr. May 21, 2018 Min. Entry.  Judge Bruce reiterated that Collins
would get reductions for acceptance of responsibility and that he would not apply an
enhancement for obstruction of justice.  May 7, 2018 Hr'g Tr. 7:10–12, Cr. ECF No. 59.  The
last remaining issue, then, was whether Collins was eligible for safety valve relief, and the last
remaining issue for Collins's eligibility was whether he was truthful in his proffer to the
Government.  *Id.* at 7:16–22.  The Government's position was that based on Judge Bruce's
rulings on some of Collins's factual objections at the first sentencing hearing, Collins "did not
truthfully provide all the information regarding his offense that he had at the time of sentencing."
*Id.* at 12:23–13:2.  For example, it argued that Collins was untruthful when he said that a person
was not working for him but was instead doing him a favor, and that Judge Bruce already found
it was untruthful when he found that Collins was directing this person, *see id.* at 13:2–22.  Judge
Bruce disagreed with the Government that some of the objections showed a lack of truthfulness,
*id.* at 22:6–15, but wanted additional argument and evidence about one: whether $40,000 that
was seized from Collins at the time of his arrest was intended to be used to purchase a car
(Collins's position) or whether it was intended to be used to purchase a kilogram of cocaine (the
Government's position), *id.* at 17:1–8, 22:16–20, 23:11–14, 25:18–20.

A special agent with the Drug Enforcement Administration who conducted Collins's
proffer interview testified as follows.  *See id.* at 26:9–11, 27:2–6.  Officers seized $40,000 from
Collins when he was arrested, *id.* at 28:5–10, and the agent received information that a source
told law enforcement that Collins was going to use the $40,000 to purchase a kilogram of
cocaine, *id.* at 28:24–29:6.  In the agent's experience, $40,000 was a reasonable price for

4

purchasing a kilogram of cocaine in the area. *Id.* at 29:7–11. Collins told the agent that he was going to use the money to purchase a vehicle at the Clinton Auto Auction. *Id.* at 29:22–25. But Collins was arrested on a Tuesday, *id.* at 30:10–12, and the Clinton Auto Auction only held auctions on Wednesdays and Saturdays, *id.* at 30:6–9.

Judge Bruce then intended to review the video of the proffer interview but there was a problem with the video file. *See, e.g.*, *id.* at 39:22–40:1. Accordingly, he had to reschedule the resentencing proceeding to May 21. *See id.* at 41:4–5.

At the May 21, 2018 hearing, Judge Bruce took up the issue of "whether or not [Collins] was truthful in his proffer to the agents; and specifically, whether or not [Collins] was truthful concerning his intentions involving $40,000 in cash in his car when he was arrested." May 21, 2018 Hr'g Tr. 3:10–16, Cr. ECF No. 60. He highlighted six pieces of evidence that he thought bore on the question: first, Collins was undisputedly engaged in trafficking ounce quantities of cocaine, *id.* at 5:17–6:3; second, $40,000 is the approximate price of a kilogram of powder cocaine, *id.* at 6:4–7; third, drug dealers typically purchase distribution amounts of drugs in cash, *id.* at 6:8–18; fourth, a source for local law enforcement "indicted [Collins] intended to purchase a kilo of cocaine with a partner during the operative time frame," *id.* at 6:19–23; fifth, there was no auto auction scheduled for the day Collins was arrested, though there was one the next day, *id.* at 6:24–7:2; and sixth, when Collins was arrested, he was "driving the opposite direction he would have needed to go if he intended to drive towards Clinton," *id.* at 7:3–7.

Judge Bruce highlighted that "[t]he defendant bears the burden of proving that he provided honest and complete information by a preponderance of the evidence." *Id.* at 8:10–12. And he concluded that, objectively considering the facts before him, he was "skeptical that [Collins] was being 100 percent truthful as to his intention with the $40,000." *Id.* at 8:18–21; *id.*

5

at 9:2–6 ("I am certainly inclined to believe the defendant did not plan on driving with the $40,000 in cash to the Clinton Auto Auction to purchase a used car for himself for the $40,000.").  He emphasized that he was "basing [his] decision on [his] understanding of the burden of proof and [his] belief the defendant bears that burden." *Id.* at 9:17–19.  As Collins remained ineligible for safety valve relief, *id.* at 11:2–3, he remained subject to a 120-month mandatory minimum, *id.* at 11:8–14.  Judge Bruce again sentenced Collins to 120 months of imprisonment and eight total years of supervised release.  *Id.* at 16:7–19.

**D.  Second Appeal**

Collins filed a timely appeal on May 23, 2018.  Second Not. Appeal, Cr. ECF No. 55. The Seventh Circuit decided his case on May 14, 2019.  *See United States v. Collins*, 924 F.3d 436 (7th Cir. 2019) ("*Collins II*").  It noted that it would review Judge Bruce's interpretation of the safety-valve provision *de novo* and his "factual findings about [the] defendant's eligibility for the safety valve, as well as [Judge Bruce's] ultimate conclusion, for clear error." *Id.* at 441. Collins argued that Judge Bruce "erred in assessing the relative burdens of proof with respect to his eligibility for the safety valve" and "that he provided a truthful and complete disclosure to the Government." *Id.* at 438.

The Seventh Circuit held that "there can be no question that the defendant must carry the burden of establishing eligibility for the safety-valve exemption from a mandatory minimum sentence." *Id.* at 441.  It noted that "[i]f, after evaluating the defendant's submission, the district court finds the statements in the proffer interview to be inconsistent, suspicious, or implausible, the court is entitled to deny safety-valve relief." *Id.* (quotation marks omitted).  The court found that, applying this approach, it had to affirm Collins's sentence. *Id.* at 445.  "The district court understood that the defendant had the burden of establishing eligibility for the safety valve[,] . . .

6

. weighed the record and statements before it[,] and concluded that [Collins] had not established his eligibility because his explanations were not credible." *Id.* It concluded that this decision was not clearly erroneous; instead, it "was a difficult decision on disputed fact" and "[t]he district court made the hard call and decided the case according to established law." *Id.*

### E.  2255 Proceedings

In December 2019, Collins filed the Pro Se 2255 Motion. *See* Pro Se 2255 Mot. 1. He alleged that Pollock provided ineffective assistance of counsel by failing to argue on appeal that Judge Bruce should have recused himself from Collins's case. Pro Se Mem. 2–3, ECF No. 1 at 7–16. The argument would have been based on *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") that came to light in 2018. Such an argument was made and was successful in *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019), resulting in the defendant's sentence being vacated for resentencing before a different judge. Collins also argued that Judge Bruce violated 28 U.S.C. § 455(a) by failing to recuse himself. Pro Se Mem. 3–14. The Government filed a response to the Pro Se 2255 Motion. Resp. Pro Se Mot., ECF No. 3.

The Court later appointed counsel to represent Collins, *see* Mar. 27, 2020 Text Order, and counsel filed a supplemental motion on October 1, 2020, *see* Counseled 2255 Mot. 1, mooting the Pro Se 2255 Motion. The Counseled 2255 Motion reasserts the claims raised in the Pro Se Motion and adds one additional claim: that Judge Bruce was actually biased against Collins and presiding over his case violated Collins's due process rights. *See id.* at 1–2, 12–13, 23–24. On July 13, 2021, the Government's response to the supplemental motion was filed. Resp. Counseled Mot. 1, ECF No. 10. The Government argues that the § 455(a) claim is not

cognizable in § 2255 proceedings and that Collins cannot show that Judge Bruce was biased

against him or that he received ineffective assistance of counsel.  *See id.*

## DISCUSSION

### I.     Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set

aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy

because it asks the district court essentially to reopen the criminal process to a person who

already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in

violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the

sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral

attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C.

§ 2255(a)).

### II.    Analysis[2]

Collins asserts three claims: first, a due process claim alleging that Judge Bruce was

actually biased against him; second, a claim that Judge Bruce's failure to recuse himself from

Collins's case based on an appearance of bias violated 28 U.S.C. § 455(a); and third, a claim that

Collins's appellate counsel, Pollock, was ineffective because she failed to raise a § 455(a)

---

[2] It appears that Collins has been released from his term of incarceration.  *See Find an inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (search for inmate number 19479-026) (last visited Mar. 30, 2023). Nevertheless, his motion is not moot because Collins challenges his conviction.  *See United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) ("When the defendant challenges his underlying *conviction,* this Court's cases have long presumed the existence of collateral consequences [satisfying Article III's case or controversy requirement].").  Moreover, even though his term of imprisonment has expired, his challenges to his sentence are not moot because he remains on supervised release.  If successful on his challenges to his sentence, the Court could reduce his term of supervised release or terminate it early.  *Cf. Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018) (finding a § 2241 petition was not moot even though the petitioner had been released from prison because a favorable ruling could be important to a motion for early termination of supervised release).

argument on appeal.  *See* Counseled 2255 Mot. 1–2, 23–24.  The Court addresses the first two

claims together and the third separately.

### A.  Due Process and § 455(a) Claims

Both the due process & § 455(a) claims are based on *ex parte* communications between

Judge Bruce and the USAO that became public in August 2018, after Collins was sentenced.

These communications have been detailed and summarized elsewhere.  *See Shannon v. United*

*States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge*

*Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019),

http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-

90067.pdf).  Collins argues that these communications demonstrate that Judge Bruce was

actually biased against him, resulting in violation of his due process rights, and, alternatively,

that they demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28

U.S.C. § 455(a).  *See* Counseled 2255 Mot. 12–13.

### 1.  Due Process

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias

against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at

883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be

proved by evidence of the judge's actual bias or by showing that "the probability of actual bias

on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.*

(quoting *Rippo v. Baker*, 580 U.S. 285 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on

Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*,

949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a

defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the *ex parte* emails "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Collins relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically. *See* Counseled 2255 Mot. 14–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Here, there is no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased

against Collins.  Instead, Collins is relying on the *ex parte* communications alone.  *See* Counseled 2255 Mot. 4–16.  The Court thus finds that Collins has failed to show either actual bias or a risk of bias so high that it violates due process.  The due process claim is denied.

### 2.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The Government does not appear to dispute that Judge Bruce's impartiality might reasonably have been questioned and, thus, that he should have recused himself from Collins's case under § 455(a).  It does argue, however, that this statutory claim is not cognizable under § 2255.  Resp. Counseled Mot. 10–15.  The Court agrees.

Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion."  *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[3]

---

[3] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[4]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice."  *Id.* (quotation marks omitted).  It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255."  *Id.*  It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency."  *Id.*  And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap.  *Id.* at 82, 83.[5]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality."  It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).  *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under

---

[4] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[5] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear.  The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]."  *Couch*, 896 F.2d at 80 (quotation marks omitted).  The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief.  *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so."  *Id.* at 82.  The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

§ 455(a).  *Liljeberg*, 486 U.S. at 858, 863.  Rule 60(b)(6) allows district courts to grant relief

from a final civil judgment in "extraordinary circumstances."  *Id.* at 863–64 (quotation marks

omitted).  The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it
> is appropriate to consider the risk of injustice to the parties in the particular case,
> the risk that the denial of relief will produce injustice in other cases, and the risk of
> undermining the public's confidence in the judicial process.

*Id.* at 864.  The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of

impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental

defect' that would justify vacating an otherwise lawful sentence under section 2255."  *Hardy*,

878 F.2d at 97.  It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would

similarly hold that a criminal judgment may be collaterally attacked based on an appearance of

impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption

that it would "for purposes of [that] appeal."  *Id.*  The only dispositive holding from the Second

Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255

because she was aware of the basis for the judge's recusal when direct appeal was available.  *Id.*

at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255

review, but only if it meets the standard laid out in *Davis*.  Under that standard, the alleged

§ 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage

of justice" and "present[] exceptional circumstances where the need for the remedy afforded by

the writ of habeas corpus is apparent."  *Davis*, 417 U.S. at 346 (quotation marks omitted).  Here,

the alleged error does not rise to that level.  As noted above, Collins has not established a due

process violation and has no evidence that any of Judge Bruce's communications or relationships

with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517

F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete

miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no

injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply

with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the

defendant did not object and no prejudice resulted because the case "lack[ed] aggravating

circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . .

apparent" (second alteration in original) (quotation marks omitted))).  And any violation of

§ 455(a) would have no bearing on Collins's guilt or innocence.  *See Hussong v. Warden*, 623

F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in

violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete

miscarriage of justice' standard required of nonconstitutional violations of federal law in order to

be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed]

[the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that

nothing in the record indicated he was not guilty (quotation marks omitted)).

     The Court does not find that *Liljeberg* requires a different result.  *Liljeberg* identified

three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6)

due to extraordinary circumstances.  *See Liljeberg*, 486 U.S. at 858.  And in *Atwood*, the Seventh

Circuit used those factors to determine whether a statutory recusal error was harmless on appeal.

*Atwood*, 941 F.3d at 885.  The *Davis* standard for nonconstitutional errors requires more than a

showing of extraordinary circumstances or that a statutory error was not harmless.  It is a "well-

settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle

than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Even if

the Court finds that the error was not harmless under those factors, that would not suffice to meet

the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Collins has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255, so it is denied.

## B. Ineffective Assistance of Counsel Claims

### 1. Legal Background

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The petitioner "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but

15

for counsel's unprofessional errors, the result of the proceeding would have been different."
*Strickland*, 466 U.S. at 694.

### 2.  Analysis

Collins argues that his appellate counsel was ineffective for failing to raise on appeal a claim that Judge Bruce violated § 455(a) by failing to recuse himself from the case.  *See* Counseled 2255 Mot. 23–24.  A similar argument that Judge Bruce violated § 455(a) by failing to disqualify himself from a defendant's sentencing was raised before the Seventh Circuit while Collins's appeal was pending.  *See* Def.-Appellant's Opening Br., *United States v. Atwood*, No. 18-2113 (7th Cir. Jan. 17, 2019) (Doc. 18).  Ultimately the Seventh Circuit found that Judge Bruce violated § 455(a) and the error was not harmless and vacated the defendant's sentence in October 2019.  *See Atwood*, 941 F.3d at 886.  Collins argues that his counsel should have likewise raised the issue on his appeal since the emails came to light while his appeal was pending and that the argument would have been successful because his case is similar to the defendant's case in *Atwood*.  *See* Counseled 2255 Mot. 16–24.

The Government argues that Collins's claim fails because: the Federal Public Defender's Office ("FPD") made a strategic decision to focus on actual bias claims rather than statutory recusal claims; even if Pollock's failure to raise the recusal issue was an oversight rather than a strategic decision, "failure to preserve an issue generally does not rise to the level of constitutional[ly] ineffective assistance of counsel"; and Collins can show no prejudice from the failure because he would not have prevailed on the § 455(a) claim even had he raised it on appeal.  Resp. 24–27.

Although "[t]he right to appellate counsel is . . . firmly established," *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), "[e]ffective advocacy does not require the appellate attorney to

raise every non-frivolous issue under the sun," *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). But if appellate counsel fails "to raise a significant and obvious issue, the failure c[an] be viewed as deficient performance." *Gray*, 800 F.2d at 646. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* Prejudice is shown if "there is a reasonable probability that [the] case would have been remanded" for further proceedings or the lower court decision would have been modified in some way. *See Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000); *see also Vang v. United States*, 17-cv-902-wmc, 16-cr-059-wmc, 2021 WL 6134572, at *6 (W.D. Wis. Dec. 29, 2011) ("[C]ourts evaluate appellate counsel's performance based on the appealable issues available and permit counsel to make strategic choices, including asking whether there is a reasonable probability that raising the issue(s) would have affected the outcome of the appeal.").

### i.      Prejudice

The Court will address prejudice first because "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. In this case, the prejudice inquiry is whether the Seventh Circuit would have vacated Collins's conviction or sentence and remanded for new proceedings had Pollock raised a claim that Judge Bruce violated § 455(a) by failing to recuse himself. The Seventh Circuit's decisions in *Atwood*, *Williams*, and *United States v. Orr*, 969 F.3d 732, 738–42 (7th Cir. 2020), guide the Court's analysis here.

Even though the claim would have been raised for the first time on appeal, the Seventh Circuit would have considered the claim *de novo* because the communications were disclosed after Collins was sentenced. *See Atwood*, 941 F.3d at 885. And because the Government conceded that Judge Bruce's impartiality might reasonably have been questioned in light of his

communications with the USAO in *Atwood*,[6] *see id.*, which was proceeding around the same time as Collins's case on appeal, it is reasonably probable they would have done so in Collins's case as well.  The Government does not specifically argue in response to Collins's § 2255 motion that Judge Bruce did not violate § 455(a).  As such, it is reasonably probable that Collins could have established that Judge Bruce violated § 455(a).  The Seventh Circuit would have then considered whether the § 455(a) violation was harmless error by looking to three factors: "(1) the risk of injustice to the parties in this case, (2) the risk of injustice to parties in future cases, and (3) the risk of undermining public confidence in the judicial process."  *Id.* (citing *Liljeberg*, 486 U.S. at 864).

### a.  Request for a Trial on Remand

To the extent that Collins would have argued that Judge Bruce presiding over the pre-plea proceedings was not harmless and his conviction should be vacated so he can receive a trial, *see* Counseled 2255 Mot. 17, the Seventh Circuit would have disagreed.  The Seventh Circuit has yet to decide a case where a defendant who pleaded guilty sought a new trial based on Judge Bruce's violation of § 455(a).  It is not clear that a defendant who pleads guilty could be entitled to a trial on remand due to a judge's violation of § 455(a).  Applying principles from *Orr* and *Williams*, however, it is clear that such a remedy is unwarranted at least in this case.  Collins voluntarily pleaded guilty and admitted to committing the offense.  *See* Change of Plea Hr'g Tr. 6:1–5, 19:17–20:5, 28:13–29:8, Cr. ECF No. 38.  Judge Bruce did not consider the evidence and find Collins guilty.  *Cf. Williams*, 949 F.3d at 1064, 1065–66 (relying heavily on the fact that "[a]lthough Judge Bruce presided over Williams's trial, he was not the trier of fact making the

---

[6] As far as the Court can tell, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided thus far.  *See, e.g.*, *Williams*, 949 F.3d at 1063; *Orr*, 969 F.3d at 738.

ultimate determination of whether the government had proved Williams guilty beyond a reasonable doubt" in finding that Judge Bruce's § 455(a) violation was harmless error). Perhaps someone who pleaded guilty could have his plea vacated and obtain a trial if he showed that a judge who violated § 455(a) made significant, discretionary rulings which impacted his decision to plead guilty. *Cf. Orr*, 969 F.3d at 739–41 (considering whether Judge Bruce's pre-trial and trial decisions were substantial, discretionary calls such that "it [wa]s possible the district court's personal biases influenced the outcome in th[e] case"). But Collins points to no such rulings. The Seventh Circuit would therefore find that Judge Bruce presiding over the pre-plea proceedings was harmless and that Collins would not be entitled to remand for a trial.

### b.  Request for Resentencing

Whether the Seventh Circuit would find that Judge Bruce's presiding over Collins's sentencing hearing was harmless error, however, is a different question. The Court first considers whether Judge Bruce exercised substantial discretion and in what ways. *See id.* (considering first whether Judge Bruce made "close discretionary call[s]" that prejudiced the defendant). Collins argues that Judge Bruce exercised discretion in ruling against him on his eligibility for safety-valve relief. *See, e.g.*, Counseled 2255 Mot. 4, 21.

The Court finds this was a close discretionary call. The decision rested on whether Collins was truthful about what he was going to do with $40,000 in cash that was in his car when he was arrested. *See* May 21, 2018 Hr'g Tr. 3:13–16. As noted above, *see supra* Background § C, Judge Bruce found that six pieces of evidence bore on the question: that Collins generally trafficked in ounce quantities of cocaine; that $40,000 was approximately the price of a kilogram of cocaine; that drug dealers typically purchase drug distribution amounts in cash; that a law enforcement source said Collins was going to buy a kilogram of cocaine during the time period;

19

that Collins said that he was going to purchase a car at an auto auction but there was no auto auction scheduled until the day following Collins's arrest; and that Collins was driving in the opposite direction of the auto auction when he was arrested. Judge Bruce acknowledged that "[i]n a lot of ways, this [wa]s just one person saying one thing and another person saying something different, or disputing what the other person said, a 'he said/she said' sort of thing." May 21, 2018 Hr'g Tr. 7:19–22. Ultimately, he concluded that he was "skeptical that [Collins] was being 100 percent truthful as to his intention with the $40,000." *Id.* at 8:19–21.

Though the Government contends that Judge Bruce's ruling on Collins's eligibility for safety valve relief was affirmed after *de novo* review, *see* Resp. Counseled Mot. 16–17, 21 n.8, the Seventh Circuit conducted *de novo* review only of his legal ruling that defendants bear the burden of proving their eligibility for safety-valve relief, *see Collins II*, 924 F.3d at 441. It reviewed his factual findings and his ultimate conclusion about whether Collins was eligible for safety-valve relief for clear error. *Id.* "Clear error review means that the district court's decision will not be reversed unless after reviewing the entire record [the court of appeals is] left with a definite and firm conviction that a mistake has been committed." *United States v. Breland*, 356 F.3d 787, 795 (7th Cir. 2004) (quotation marks omitted). The Seventh Circuit concluded that Judge Bruce's conclusion that "Collins had not established his eligibility because his explanations were not credible . . . . was not clearly erroneous." *Collins II*, 924 F.3d at 445. In other words, the Seventh Circuit was not left with a firm conviction that Judge Bruce's conclusion was mistaken. But that does not mean no reasonable judge could have decided the other way. *Cf. Orr*, 969 F.3d at 739 (finding that Judge Bruce's ruling on a motion to suppress was not a close discretionary call, at least in part, "[b]ecause no reasonable district court would have reached a different result"). Indeed, the Seventh Circuit acknowledged that this was a

20

difficult decision.  *See Collins II*, 924 F.3d at 445 ("It was a difficult decision on disputed

facts.").  And it emphasized throughout its decision that it is the district court judge's

interpretation of the defendant's explanation that is most important.  *See id.* at 444 (noting that

"it is the district court's estimation of the defendant's submission . . . that counts").

Moreover, this discretionary call prejudiced Collins.  *See Orr*, 969 F.3d at 740–41

(considering whether the discretionary decisions Judge Bruce made prejudiced the defendant

before moving on to consider the harmless error factors from *Liljeberg*).  Because Judge Bruce

did not believe Collins's explanation about the $40,000, Collins was subject to a ten-year

mandatory minimum sentence of incarceration and an eight-year term of supervised release.  Had

he been found eligible for safety valve relief, he could have been sentenced to a shorter term of

imprisonment and a shorter term of supervised release.  *See* U.S. Sent'g Guidelines Manual

§ 5C1.2 cmt. n. 9 (U.S. Sent'g Comm'n 2016) ("A defendant who meets the criteria under this

section is exempt from any otherwise applicable statutory minimum sentence of imprisonment

and statutory minimum term of supervised release.").  The mandatory minimum exceeded what

would have otherwise been Collins's Guidelines range for imprisonment.  *See supra* Background

§ A.

Keeping that discretionary decision in mind, the Seventh Circuit would have moved on to

addressing the *Liljeberg* factors.  The Seventh Circuit likely would have found that factor one—

risk of injustice to the parties—weighed in favor of remanding for a resentencing before a new

judge.  In *Atwood* and *Orr*, the Seventh Circuit found that there was a "tangible risk of

unfairness" to the defendants because of the discretion exercised by Judge Bruce.  *Orr*, 969 F.3d

at 741; *see Atwood*, 941 F.3d at 885 ("Upholding Atwood's sentence . . . creates a real risk of

unfairness to him.").  In both cases, the court noted that the discretion created a risk that the

21

court's "personal biases influenced the outcome in th[e] case." *Orr*, 969 F.3d at 741; *see Atwood*, 941 F.3d at 885 ("[T]he open-endedness of the § 3553(a) factors leaves ample room for the court's discretion.  That discretion invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes."  (quotation marks omitted)). Likewise, here, there is a tangible risk of unfairness to Collins because Judge Bruce made a close discretionary call—one that, importantly, was based on Judge Bruce's assessment of Collins's credibility—that made Collins unable to receive a sentence lower than 120 months of imprisonment.  "Conversely, there is little risk of unfairness to the government if [the Court] remand[s] [Collins's] case for resentencing." *Atwood*, 941 F.3d at 885.  Resentencing is relatively inexpensive and "would not impose a special hardship." *Id.*

How the Seventh Circuit would have addressed the second factor—the risk of injustice to parties in future cases—is less clear.  In *Atwood*, the court addressed this factor only briefly, finding that it weighed in favor of granting the defendant relief because "enforcing § 455(a) in this case may prevent a substantive injustice in some future case . . . by encouraging judges to exercise caution in their communications." *Atwood*, 941 F.3d at 885 (quotation marks omitted). In *Williams*, however, the Seventh Circuit found that this factor weighed against granting the defendant his requested relief because the Seventh Circuit Judicial Council publicly reprimanded Judge Bruce and ordered that he remain unassigned to matters with the USAO for a period of time and because Judge Bruce changed his practices to avoid future problems. *Williams*, 949 F.3d at 1065.  The *Williams* decision does not mention the contrary finding in *Atwood*. *Id.*  In *Orr*, the Seventh Circuit found the second factor weighed against granting the defendant relief because "no reason [wa]s provided as to why the *Williams* decision was erroneous on th[at] point," though it did acknowledge the contrary finding in *Atwood*. *Orr*, 969 F.3d at 741.  In light

22

of these unexplained conflicting holdings, the Court cannot guess how the Seventh Circuit would have weighed this factor for Collins.

However, even if the Seventh Circuit would have found that factor two weighed against resentencing, it would have found the third factor—the risk of harm to the public's confidence in the impartiality of the judiciary—weighed in favor of resentencing. In *Atwood*, the Seventh Circuit found that this factor weighed in favor of remanding for resentencing. *Atwood*, 941 F.3d at 885–86. It noted that "[i]n sentencing, the most significant restriction on a judge's ample discretion is the judge's own sense of equity and good judgment" and reasoned that "[w]hen those qualities appear to be compromised, the public has little reason to trust the integrity of the resulting sentence." *Id.* at 886. Because the Government had "conceded that Judge Bruce compromised his appearance of impartiality," the Seventh Circuit concluded that "[a]llowing [the defendant's] sentence to stand would undermine the public's confidence in the fairness of this sentence and in the impartiality of the judiciary." *Id.*; *cf. Orr*, 969 F.3d at 741–42 (finding that upholding the defendant's conviction "may damage the public's confidence in the impartiality of the judiciary" in light of the "substantial discretion" exercised by Judge Bruce in making evidentiary rulings at trial). The same considerations apply to Collins's case. Collins was sentenced by Judge Bruce, who exercised substantial discretion in ruling against him on safety-valve eligibility. If Pollock had raised the recusal issue on appeal, the Government very likely would have conceded an appearance of impropriety; in light of that concession, leaving Collins's sentence intact would similarly undermine public confidence in the fairness and impartiality of the judiciary.

Because at least two of the factors would weigh in favor of vacating Collins's sentence and remanding for resentencing, the Seventh Circuit would likely not find the § 455(a) error

harmless.  *Cf. Orr*, 969 F.3d at 742 (concluding that "the error in Judge Bruce not disqualifying

himself from the case was" not harmless where the first and third factors supported vacating the

defendant's conviction).  In other words, had this issue been raised, there is a reasonable

probability that it would have led to Collins' sentence being vacated and his case remanded for

resentencing before a different judge.

### ii.  Deficient Performance

The question remains, however, whether it was deficient performance for Pollock not to

raise the issue on appeal.  Both sides submitted evidence outside the record that bears on whether

Pollock's failure to raise the recusal issue on appeal was objectively unreasonable.[7]  Collins

submitted an affidavit from Pollock in which she declares that her "failure to raise an issue under

the recusal statute, 18 U.S.C. Section 455(a)[8] was not based on any litigation strategy."  Pollock

Aff. ¶ 6, Counseled 2255 Mot. Ex. C, ECF No. 6-3.  Instead, she states, she "simply failed to

recognize the recusal statute provided the basis for a valid claim that [his] sentence should be

vacated" and "[t]his was an oversight on [her] part rather than a strategic decision."  *Id.*

The Government—which conducted discovery under Rule 6 of the Rules Governing

§ 2255 Proceedings—submitted emails which it suggests prove that the FPD made a strategic

decision to forego raising statutory recusal claims.  *See* Resp. Counseled Mot. 24–25.  And it

argues that even if Pollock's failure to raise the issue were due to an oversight, that still would

not rise to the level of constitutionally ineffective counsel because "[p]rior to the decision in

---

[7] Typically, an ineffective assistance of counsel claim based on the failure to raise an issue on appeal does not necessitate an evidentiary hearing.  *See Gray*, 800 F.2d at 647 ("When a claim of ineffective assistance of counsel is based on failure to raise issues on appeal, we note it is the exceptional case that could not be resolved on an examination of the record alone.").  The court may simply "examin[e] the trial record and the appellate brief" and decide whether the issue the defendant wanted their counsel to raise was "a significant and obvious issue" that was "clearly stronger than those presented."  *Id.* at 646.  In this case, however, the facts underlying the claim to be raised on appeal were not available while the case proceeded at the district court level, so the Court must look to facts beyond the record.

[8] Presumably she meant 28 U.S.C. § 455(a).  There is no 18 U.S.C. § 455(a).

*Atwood*, the statutory recusal argument was neither obvious nor clearly stronger than the issues [Pollock] raised on appeal," particularly because Collins had not raised a statutory recusal claim before the district court.  *See id.* at 26–27.

The Court concludes that an evidentiary hearing is warranted because "the motion, files, and records of the case" do not "conclusively show that [Collins] is entitled to no relief." *Torzala*, 545 F.3d at 525 (quotation marks omitted); *Bradley v. United States*, 219 F. App'x 587, 589 (7th Cir. 2007) (finding that the district court abused its discretion by denying the petitioner an evidentiary hearing where the petitioner "supported his claim . . . with several affidavits"). The recusal claim was a significant, obvious issue.  *Gray*, 800 F.2d at 646.  The Seventh Circuit Judicial Council acknowledged in May 2019, when it adopted the Special Committee's report on the judicial conduct complaints against Judge Bruce, that "unnecessary ex parte communications . . . . creat[e] an appearance of impropriety and unfairness."  Special Committee Report 8, *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council adopted May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf); *see id.* ("[P]ublicity [of the communications] would likely further a perception that Judge Bruce has an inappropriate closeness with the [USAO] and made too common a practice of ex parte communications, both of which could undermine the public confidence in Judge Bruce.").  Indeed, Judge Bruce was removed from all cases involving the USAO after then-Chief Judge James Shadid learned about the communications.  *See Atwood*, 941 F.3d at 884.  It should have been obvious that these *ex parte* communications potentially posed a risk to criminal defendants like Collins such that Pollock should have explored whether she could raise a claim based on the communications on

Collins's behalf.[9]  Moreover, the Court finds that the statutory recusal claim was clearly stronger

than the claims Pollock did raise.  *See Gray*, 800 F.2d at 646.[10]  The argument that Judge Bruce

had erred in ruling that defendants carry the burden of establishing eligibility for safety valve

relief was weak; the Seventh Circuit held that "there can be *no question* that the defendant must

carry th[at] burden."  *Collins II*, 924 F.3d at 441 (emphasis added).  And because Judge Bruce's

factual findings were reviewed only for clear error, the challenge to his ultimate eligibility

finding was unlikely to prevail.  *See id.* at 445.  Especially where, as here, the factual finding

amounted to essentially Judge Bruce's determination of Collins's credibility, a claim like the

statutory recusal claim that would cast doubt on Judge Bruce's decisionmaking would have been

especially strong.

As explained before, Collins was resentenced on May 21, 2018.  *See supra* Background

§ C.  His appeal was docketed shortly thereafter.  *See supra* Background § D.  Judge Bruce's *ex*

*parte* communications became public in August 2018.  *See supra* Discussion § II(A).  Collins's

appeal was not decided until May 14, 2019.  *See supra* Background § D.  Pollock could have

sought to file an amended brief raising the recusal issue any time before the case was decided.

Pollock states that her failure to do so was not strategic and instead was an oversight.  Pollock

Aff. ¶ 6.

---

[9] The Court wonders why Pollock did not attempt to raise *any* claims based on Judge Bruce's communications in Collins's appeal.  The Government argues that the FPD was focusing on actual bias due process claims, *see* Resp. Counseled Mot. 24, but Pollock did not even attempt to bring a due process claim on Collins's behalf.  Although those claims have not been successful, *see supra* Discussion § II(A)(1), it is not apparent to the Court why the FPD would have considered waiting to raise those issues in postconviction motions for defendants with pending appeals and risk procedurally defaulting the claims.

[10] It is not clear whether this showing must be made in all cases.  *Compare Gray*, 800 F.2d at 646 (providing that "*[g]enerally*, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" (emphasis added)), *with Ramirez v. Tegels*, 963 F.3d 604, 613 (7th Cir. 2020) (reciting the standard without the "generally" qualifier).  This is the type of case where it would appear such a showing need not be made in order to rebut the presumption of effective assistance of counsel: it was an obvious, strong issue whose basis did not become clear until after the trial court proceedings concluded (in other words, it was a new claim to be raised on appeal) and the attorney has stated that she did not make a strategic decision not to raise it.

2:19-cv-02339-SLD  # 12  Page 27 of 29

The evidence provided by the Government does not contradict this statement. The evidence provided by the Government shows that Pollock became aware of the potential for raising a statutory recusal claim based on the *ex parte* communications on January 24, 2019 at the latest. On that day, she received an email from Gregg Walters from the USAO alerting her to the opening brief in *Atwood*, which included a statutory recusal claim based on the *ex parte* communications, and indicating that the Government would not oppose a motion to file an amended brief raising a similar issue in another of Pollock's cases. Jan. 24, 2019 Walters Email Chain, Resp. Counseled Mot. Ex. B, ECF No. 10-2. Pollock sent the message to Federal Public Defender Tom Patton asking what he thought because she "had not planned on raising this on direct appeal." *Id.* No evidence provided by the Government explains why Pollock had not planned on raising the issue on direct appeal or how Walters's email impacted her point of view.

The Government is resting its argument that Pollock, and the FPD generally, made a strategic decision not to raise statutory recusal claims because it doubted they would be successful on an email from Assistant Federal Public Defender Peter Henderson to Patton about a motion for a new trial they filed in a different case. Resp. Counseled Mot. 24. It is not clear whether Pollock was even aware of these discussions, but even if she were, the email does not support the Government's argument. Patton had sent Henderson a draft of an amended motion for a new trial for a different case, and Henderson sent edits back. Dec. 4, 2019 Henderson Email Chain, Resp. Counseled Mot. Ex. A, ECF No. 10-1. Henderson also stated: "I remembered why we didn't include 455(a) before. O'Malley seems to imply you need to show a possibility of acquittal for anything but the most serious constitutional claims, and a statutory claim under 455(a) might not qualify. Makes sense to include it now, though, after Atwood." *Id.*

27

O'Malley refers to *United States v. O'Malley*, 833 F.3d 810 (7th Cir. 2016).  In that case, the Seventh Circuit considered what kinds of claims can be brought and what showing needs to be made on a motion for a new trial under Federal Criminal Rule of Procedure 33.  *See id.* at 813–15.  It held that "a motion for a new trial based on newly discovered evidence that demonstrates constitutional or statutory error may . . . be brought under Rule 33" but can be granted only "if the interest of justice so requires." *Id.* at 815 (quotation marks omitted).  The court also reiterated that "the interest of justice requires a new trial if additional evidence . . . probably would have led to acquittal." *Id.* at 813 (quotation marks omitted).  Putting these principles together, the case implies that a claim of constitutional or statutory error must create a possibility of acquittal to be successful in a motion for a new trial based on new evidence under Rule 33.  *O'Malley* says nothing about raising claims of statutory error, particularly statutory recusal claims, *on appeal*.  It is more likely that Henderson was only explaining why they had chosen not to raise a statutory recusal claim when filing a motion for a new trial based on new evidence in that particular case, not stating the FPD's general position on raising statutory recusal claims on appeal.[11]

The Court finds that Collins has provided sufficient facts, supported by affidavits, that, if proved, would rebut the presumption of effective assistance of counsel and entitle him to relief.  Therefore, Collins is entitled to an evidentiary hearing on this claim.  *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("While . . . a district court [is required] to grant an evidentiary hearing if a § 2255 petitioner alleges facts that, if proven[,] would entitle him to

---

[11] Indeed, if this email did show that the FPD's decision not to raise statutory recusal claims on appeal was based on a concern over *O'Malley*, it could demonstrate that the decision was objectively unreasonable because it was based on a misunderstanding of the law.  *Cf. Johnson v. United States*, 604 F.3d 1016, 1019 (7th Cir. 2010) ("We have repeatedly recognized, however, that a decision of trial counsel based on a misapprehension of law may constitute objectively unreasonable performance.").  The Seventh Circuit explicitly held in *Fowler v. Butts*, 829 F.3d 788, 791–95 (7th Cir. 2016), that § 455(a) claims can be raised for the first time on direct appeal.

relief, the threshold determination that the petitioner has sufficiently alleged such facts requires the petitioner to submit a sworn affidavit showing what specific facts support the petitioner's assertions.").

## CONCLUSION

Accordingly, Petitioner Maurice Collins's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 1, and counseled motion for a status conference, ECF No. 11, are MOOT.  The counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 6, is DENIED IN PART.  Collins's due process claim and claim under 28 U.S.C. § 455(a) are DENIED.  The Court refers the matter to United States Magistrate Judge Jonathan Hawley to conduct an evidentiary hearing on Collins's claim that his counsel was ineffective for failing to raise on appeal a claim that Judge Bruce should have recused himself under 28 U.S.C. § 455(a).

Entered this 30th day of March, 2023.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE